James E. LOCK, Plaintiff–Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PENN-
SYLVANIA and Sue Ann Head, Di-
rector of the Division of Workers' Com-
pensation of the Department of Labor
for the State of Tennessee, Defendants–
Appellees.

Supreme Court of Tennessee,
at Nashville.

April 15, 1991.

Frank Steiner, Ann Buntin Steiner, Steiner & Steiner, Nashville, for plaintiff-appellant.

Cindy L. Porter, Levine, Mattson, Orr & Young, Nashville, for defendant-appellee Nat. Union Fire Ins. Co.

Charles W. Burson, Atty. Gen. & Reporter, Diane Stamey Dycus, Asst. Atty. Gen., Nashville, for defendant-appellee Sue Ann Head, etc.

## OPINION

DROWOTA, Justice.

In this workers' compensation appeal Plaintiff–Appellant, James E. Lock, seeks recovery for injuries received in two accidents, the first occurring on October 22, 1987, and the second on July 10, 1988. Plaintiff has raised numerous issues on appeal dealing with temporary total disability, permanent partial disability, permanent total disability, the Second Injury Fund and the lump sum award of benefits. The Defendant National Union Fire Insurance Company raises the issue of the trial court's post-trial award of litigation expenses as discretionary costs pursuant to Rule 54.04(2), Tenn.R.Civ.P.

The Chancellor found that Plaintiff suffered two work-related injuries in the course and scope of his employment. He found that as a result of the first accident, Plaintiff suffered a 25 percent disability to his left foot, and as a result of the second accident, Plaintiff suffered a 35 percent disability to his right arm. The Chancellor found that Plaintiff reached his maximum medical improvement on April 27, 1989. He also found that lifetime medical treatments and benefits should be provided for Plaintiff by the Defendant for both accidents. The Chancellor concluded by finding no showing of a special need to justify a lump sum award of benefits. The Chancellor assessed additional costs against the Defendant pursuant to Rule 54.04(2), Tenn. R.Civ.P. in the amount of $1,818.25. The Defendant Sue Ann Head was dismissed.

At the time of trial, Plaintiff was 38 years old, had a high school education and a year of college. He completed a four-year apprenticeship program at a vocational technical school where he learned carpentry, welding, safety programs and the reading of blueprints. While in the army, he also received training in air-conditioning and refrigeration.

## THE FIRST INJURY

In the first accident, which occurred on October 22, 1987, Plaintiff, while working within the course and scope of his employ-

ment for the Nashville Thermal Transfer Plant, fell approximately 27 feet from a platform. He was rushed to Baptist Hospital where he was seen in the emergency room by Dr. Thomas Thompkins, an orthopedic specialist. This injury resulted in subsequent surgery to Plaintiff's left foot by Dr. Thompkins. Plaintiff remained in the hospital for four days, being discharged on October 26, 1987. Dr. Thompkins, Plaintiff's treating physician, gave Plaintiff an impairment rating of 15 percent to the body as a whole due to the injury to the foot. Plaintiff was examined by Dr. John Lamb, an orthopedic surgeon, on July 13, 1989, and January 17, 1990, and he testified that Plaintiff had a five percent impairment to his left foot which would convert to two percent to the body as a whole.

Plaintiff returned to light duty work in December, 1987, and began his regular duties on January 4, 1988. Plaintiff thus worked from mid-December 1987 until the second accident on July 10, 1988.

The parties stipulated that Plaintiff suffered an injury on October 22, 1987, in the course of his employment with Nashville Thermal Transfer Corporation. The parties further stipulated that Plaintiff sustained temporary total disability from October 23, 1987, until December 10, 1987, for which period of seven weeks, the Plaintiff was compensated in full by the Defendant, National Union, in the amount of $1,470.00. The Defendant National Union paid all medicals totaling $9,550.00.

The Chancellor found that Plaintiff suffered a 25 percent disability to his left foot and awarded Plaintiff $6,562.50 for permanent partial disability to the foot, pursuant to T.C.A. § 50–6–207(3)(A)(ii)(n).

## THE SECOND INJURY

The second accident occurred on July 10, 1988, when in the course and scope of his employment Plaintiff fell from a scaffolding approximately seven to eight feet injuring his right wrist and hip. He was rushed again to Baptist Hospital where he was seen and treated by Dr. Daniel Phillips. This injury resulted in surgery to Plain-

tiff's wrist which required a bone graft from his hip. He remained in the hospital for five days following his surgery. Dr. Phillips testified that Plaintiff had a 20–25 percent impairment of the right upper extremity, which translated to a 15 percent impairment to the body as a whole. Dr. John Lamb, the evaluating physician, testified that Plaintiff had "between 25 and 30 percent impairment of his right upper extremity, which included both the forearm and the wrist, based on the traumatic arthritis as well as the deformity as a result of the fracture." Dr. Lamb placed this disability rating at 15 to 18 percent to the body as a whole.

Dr. Phillips released Plaintiff to return to work on January 4, 1989, without any restrictions. Dr. Phillips last saw Plaintiff on April 27, 1989, at which time he "evaluated him and made a permanent medical impairment rating and released him from active care." Dr. Phillips stated that, "when I released him from care, I made no global restrictions to activities, but simply advised him to resume activities as tolerated and as his pain permitted. I think that he had a full healing of the bone injury at the time of my last evaluation and would have no absolute contraindictions to resuming any activity other than limitations of pain." Dr. Phillips further stated that the hip and wrist had both healed completely.

The parties stipulated that Plaintiff suffered a second injury on July 10, 1988, in the course of his employment. The parties further stipulated that Plaintiff sustained temporary total disability from July 11, 1988, to at least April 28, 1989, for which 45 weeks the Plaintiff was compensated in full by the Defendant, National Union, in the amount of $10,395.00. Plaintiff also received payment of disability benefits for 35 weeks from April 29, 1989, to December 30, 1989, in the amount of $8,085.00. The Defendant, National Union, also paid the medicals totaling $15,949.00.

The Chancellor found that Plaintiff suffered a 35 percent disability to his right arm and awarded Plaintiff $16,170.00 for permanent partial disability to the arm. He further found that Plaintiff reached his

maximum medical improvement on April 27, 1989, and that the Defendant, National Union, should be granted a credit of $8,085.00 in overpayments of temporary total disability which had been previously paid to Plaintiff. The Chancellor also found that Defendant, National Union, should be responsible for all lifetime medical treatments and benefits for these two injuries.

## ISSUES

### I.

Plaintiff first contends that the award by the Chancellor should not have been limited to scheduled members, the foot and arm, but should have been based on 400 weeks. The Chancellor found injuries to two scheduled members and based his award of 35 percent disability to the arm and 25 percent disability to the foot on the basis of T.C.A. § 50–6–207(3)(A)(ii)(m) and (n), respectively.[1]

Plaintiff proceeds in this Court on various theories involving: (A) injuries to the body as a whole, (B) multiple impairment, (C) total disability and (D) combined injuries as provided for in the statute, all of which he alleges require an enhanced award or awards based on 400 weeks.

### A.

■ Plaintiff cites T.C.A. § 50–6–207(3)(F) as authority for basing his recovery on 400 weeks. This code section states in part:

All other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury.

This section applies only to disabilities "not above enumerated." The losses of an arm and foot are "enumerated" in T.C.A.

§ 50–6–207(3)(A)(ii)(m) and (n). Plaintiff's argument that the Chancellor erred in awarding permanent partial disability benefits to scheduled members rather than to the body as a whole must fail because this Court has repeatedly held that "[w]hen the injury is to a scheduled member, the disability award is exclusively controlled by the impairment rating established by the General Assembly for that member and may not properly be apportioned to the body as a whole as in the case of unscheduled injuries." *Reagan v. Tennessee Municipal League*, 751 S.W.2d 842, 843 (Tenn. 1988). *See also Wade v. Aetna Casualty & Surety Co.*, 735 S.W.2d 215 (Tenn.1987); *Chapman v. Clement Bros.*, 222 Tenn. 223, 435 S.W.2d 117 (1968).

### B.

■ Plaintiff next avers that he suffered multiple injuries in each accident and should not be limited to benefits based on an injury to a scheduled member. He argues that in his first accident he broke his foot, suffered a concussion and incurred a vision problem which required a change in his prescription. In the second injury, he broke his wrist and injured his hip. Plaintiff alleges that each of his injuries affects more than just the member involved, that each injury has had an effect upon the body as a whole, and that the award should be based upon 400 weeks.

The Chancellor found, and the record fully supports, that the Plaintiff suffered only one permanent injury in each accident. Plaintiff may have sustained a number of temporary injuries in each accident; however, as found by the Chancellor, Plaintiff sustained only one permanent injury in each accident.

### C.

■ Plaintiff alleges that T.C.A. § 50–6–207(4) authorizes the base of 400 weeks for permanent total disability. That section defines permanent total disability

---

**1.** Subsection (m) provides for 66⅔ percent of the average weekly wages during 200 weeks for the loss of an arm. Subsection (n) provides for 66⅔ percent of the average weekly wages for

125 weeks for the loss of a foot. Subsections (m) and (n) total 325 weeks and Plaintiff seeks a recovery based on 400 weeks.

as follows: "When an injury not otherwise specifically provided for in this chapter as amended, totally incapacitates the employee from working at an occupation which brings him an income, such employee shall be considered 'totally disabled'." Plaintiff avers that, due to his injury, he is totally disabled, and "in any event, his total disability exceeds the 25 percent disability to his left foot and 35 percent disability to his right arm as found by the Chancellor."

Since the Plaintiff's injuries occurred after July 1, 1985, the scope of review by this Court pursuant to T.C.A. § 50–6–225(e) is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings below, unless the preponderance of the evidence is otherwise. This standard of review requires this Court to weigh in more depth factual findings and conclusions of the trial court. *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn.1987). Considering the Plaintiff's age, skills, education and training, it is clear that the Plaintiff is not totally and permanently incapacitated from working at an occupation which brings him an income. The Chancellor's finding that Plaintiff was only partially disabled is supported by a preponderance of the evidence.

### D.

■ Plaintiff finally argues that the award should have been based on 400 weeks under T.C.A. § 50–6–207(3)(A)(ii)(dd), which provides that "[f]or the loss of one (1) arm and one (1) foot," one is entitled to an award based upon 400 weeks. It is uncontroverted that Plaintiff has permanent injuries to his arm and foot. Defendant argues that subsection (dd) is inapplicable because it only applies to permanent injuries which occur as a result of the *same* accident. We are thus faced with an issue of first impression in Tennessee: Do subsections (s) through (ff) of T.C.A. § 50–6–207(3)(A)(ii) apply to injuries sustained in a single accident or in separate accidents?

The legislature has recognized that a combination of injuries to members of the body (in this case the arm and foot) has a greater disabling effect than the arithmetical sum of individual scheduled awards. For example, 325 weeks, the combined total of individual awards to the arm and foot, subsections (m) and (n), is less than subsection (dd) awarding 400 weeks. Obviously, had Plaintiff recovered permanent disability for his left foot in an earlier suit, he could not now proceed under subsection (dd) claiming the loss of the same foot. However, Plaintiff has filed a single suit seeking to recover for injuries that occurred on separate occasions. We can see no justification in allowing Plaintiff to recover in one suit for subsections (m) and (n) injuries to the arm and foot, which occurred on separate occasions, and disallowing recovery under subsection (dd). The statute fails to address this specific issue; however, we can think of no logical reason to deny recovery under subsection (dd). We wish to point out to the bar of this state the dangers of filing a single suit involving successive injuries. In the present case, we are not dealing with the "Last Injurious Injury Rule" or with apportionment of workers' compensation benefits between successive employers or their insurance companies, as found in *McCormick v. Snappy Car Rentals, Inc., et al.,* 806 S.W.2d 527 (Tenn.1991). *McCormick* dealt with different employers and their respective carriers; and we held that "separate workers' compensation suits must be filed for each injury in order to avoid the 'Last Injurious Injury Rule.'" *McCormick* is clearly distinguishable from the present case. Here we have successive injuries; however, we have the same employer and insurance carrier, and we are not faced with the apportionment of liability. *See, Bennett v. Howard Johnson's Motor Lodge,* 714 S.W.2d 273 (Tenn.1986); *Baxter v. Smith,* 364 S.W.2d 936 (Tenn.1962).

We are of the opinion that subsection (dd) applies and that the disabilities should be averaged to 30 percent and the award should be based on 400 weeks in accordance with T.C.A. § 50–6–207(3)(A)(ii)(dd). *See Queen v. New York Underwriter's Insurance Co.,* 222 Tenn. 235, 435 S.W.2d 122 (Tenn.1968).

## II.

■ Plaintiff next asks: "Is the Second Injury Fund liable for any portion of Plaintiff's award or is the Defendant Insurance Company liable for the full award?" Interestingly, the Defendant insurance company in its brief and during oral argument admitted that it was responsible for both the 1987 and 1988 injuries to Plaintiff.

The Second Injury Fund statute, T.C.A. § 50-6-208, provides that an injured employee may be eligible for benefits in one of two ways. First, if an injured employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, the Second Injury Fund will pay the difference in the amount received by the injured employee for the second injury and the amount to which he would be entitled in order to be compensated for his total disability. T.C.A. § 50-6-208(a). Second, if an injured employee has received a prior workers' compensation award or awards for permanent disability to the body as a whole and the combination of such awards equals or exceeds 100 percent permanent disability to the body as a whole, then the Second Injury Fund will pay benefits due to the injured employee in excess of 100 percent. T.C.A. § 50-6-208(b).

In the case at bar, there is no finding that Plaintiff is totally and permanently disabled, § 208(a), nor is there a finding that Plaintiff has received awards equal to or exceeding a hundred percent permanent disability to the body as a whole. § 208(b). *See Burris v. Cross Mountain Coal Co.,* 798 S.W.2d 746 (Tenn.1990). Based upon the presumption of correctness of the trial court's decision, the second injury fund has no application to this case and was properly dismissed.

## III.

■ Plaintiff next avers that he is entitled to temporary total disability payments for the period from April 27, 1989, through December 30, 1989, less the three week period he worked. He contends he did not reach maximum medical recovery until January, 1990.

It is well settled in this state that "[t]emporary total disability benefits ... are terminated either by the ability of the employee to return to work or [by] the attainment of maximum recovery from his injury." *Brown Shoe Company v. Pipes,* 581 S.W.2d 140, 141 (Tenn.1979); *Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn.1978). Thus, when a Plaintiff becomes able to work at any employment permitted by the nature of his injuries or has attained maximum recovery, his temporary total disability benefits end.

As to the first accident, the parties stipulated that Plaintiff sustained temporary total disability from October 23, 1987, until December 10, 1987, when he returned to work. The Plaintiff worked from mid-December 1987 until the second accident on July 10, 1988. The Chancellor found that Plaintiff had reached maximum medical improvement on April 27, 1989. Based upon the testimony of Dr. Phillips, cited earlier in this opinion, we agree with the Chancellor's conclusion. The preponderance of the evidence does not indicate that the Chancellor erred in terminating Plaintiff's temporary total disability benefits on April 27, 1989.

## IV.

■ Plaintiff's final argument is that his award should be paid in a lump sum. The Chancellor allowed the Plaintiff a lump sum only for past due benefits. The court also ordered that the separate benefits for the arm and foot should be paid consecutively rather than concurrently. Since our award is based upon the combination of the arm and foot, T.C.A. § 50-6-207(3)(A)(ii)(dd), benefits should be paid consecutively. We agree with the Chancellor's assessment. Plaintiff shall receive the benefits accrued in a lump sum, and the remaining benefits shall be paid on a periodic basis. The Plaintiff may file a motion in the Chancery Court pursuant to T.C.A. § 50-6-229, seeking commutation to one or more lump sums if he can show a

sufficient change in circumstances necessitating such a commutation.

## V.

■ The Defendant insurance company, National Union, avers that the Chancellor erred in his post-trial award of litigation expenses as discretionary costs. Plaintiff contends that the award was justified under Tenn.R.Civ.P. 54.04 which provides:

(1) Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs ...;

(2) A party who desires to recover discretionary costs or any recoverable costs not included in the bill of costs prepared by the clerk of the trial court shall move the court to assess discretionary costs and attach thereto an itemized and verified bill of costs. The affidavit shall be made by the party or his duly authorized attorney or agent having knowledge of the facts, certifying that such items of costs are accurate and were reasonable and necessary to preparation and trial of the case and that the services for which such fees have been charged were actually performed. The motion shall be filed as a post-trial motion pursuant to Rule 59.01.

It is Plaintiff's contention that section (2) was added to Rule 54.04, by amendment effective August 1, 1986, for the very purpose of authorizing the assessment of just such expenses as costs.

Rule 54.04(2) specifically authorizes the recovery of discretionary costs. In compliance with section (2), Plaintiff filed a motion to assess additional costs,[2] together with an affidavit and a bill of costs.[3] The Defendant insurance company filed a response to Plaintiff's motion to assess additional costs and averred that "[t]he only costs which are subject to taxation are those by legislative authority." The Chancellor found "that the additional cost items submitted by Plaintiff are accurate and were reasonable and were necessary to the preparation and trial of the case and that the services for which such fees have been charged were actually performed." The Chancellor then granted Plaintiff's motion.

The Defendants' primary defense to the assessment is that there was no legislative authority for the assessment. We disagree. Before section (2) became effective, the 1986 amendment was duly approved by resolutions of both houses of the General Assembly in compliance with T.C.A. § 16–3–404.[4] Tennessee Code Annotated § 16–3–406 states that "after such rules shall have become effective, all laws in conflict therewith shall be of no further force or effect." In construing section 406, the Court of Appeals held in *Mid–South Pavers v. Arnco Const., Inc.*, 771 S.W.2d 420, 422 (Tenn.App.1989), that "[c]onflicts between provisions of the Tennessee Rules of Civil Procedure and provisions of the Tennessee Code which cannot be harmoniously construed will be resolved in favor of the Tennessee Rules of Civil Procedure." We find no statutes conflicting with Rule 54.04(2). After the approval of section (2) by the legislature in 1986; this Court has

---

**2.** Plaintiff's motion was filed pursuant to Rules 54.04(2) and 59.01 of the Tenn.R.Civ.P. Plaintiff also relied upon T.C.A. § 50–6–226(c)(1) for the assessment of costs by the treating physician for giving testimony by deposition. This subsection applies only to workers' compensation actions.

**3.** The bill of costs consisted of: (1) the court reporter's appearance fee at trial, (2) the court reporter's appearance and transcription costs for the depositions of Drs. Phillips, Tompkins and Lamb, (3) the fees of Drs. Phillips, Tompkins and Lamb for giving testimony by deposition, (4) the transcription costs of the deposition of Plaintiff, and (5) the court reporter fee for

the depositions of two witnesses who testified at trial, the supervisor and the safety director at the Nashville Thermal Transfer Plant. These costs totaled $1,818.25. The Defendant, National Union, acknowledges that the treating physicians fee would be subject to being taxed as costs pursuant to T.C.A. § 50–6–226(c)(1).

**4.** T.C.A. § 16–3–404 states that "[t]he Supreme Court shall fix the effective date of all its rules, provided, however, that such rules shall not take effect until they have been reported to the general assembly by the chief justice ... and until they have been approved by joint resolution of both houses of the general assembly."

taken no action to repeal, modify or amend Rule 54.

Plaintiff's counsel has raised several novel issues in the trial and appeal of this case. This is the first time this Court has been asked to interpret our 1986 amendment to Rule 54.04 dealing with discretionary costs. It was our intent that reasonable and necessary costs, in the preparation and trial of a case, could be assessed as discretionary costs by the trial court.[5] The awarding of such costs is a discretionary matter with the trial court, and we find no abuse of discretion in this case.

The judgment of the trial court is affirmed as modified. Costs incident to the appeal will be taxed to Appellee, National Union Fire Insurance Company of Pittsburg, Pennsylvania. Interest pursuant to T.C.A. § 50–6–225(h) (Supp.1990) is awarded to the Plaintiff.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

**5.** Recoverable costs are set out in footnote 3. We think it appropriate to point out that Rule 54 does not permit trial courts to tax attorneys' fees as costs. *Owen v. Stanley,* 739 S.W.2d 782, 789 (Tenn.App.1987).