# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 29, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | |
|---|---|
| **ROZANNE F. WRIGHT** ) | |
| **(FOLK-SCHMIDT),** ) | |
| ) | |
| Plaintiff/Appellant, ) | **Davidson Circuit No. 85D-3523** |
| ) | |
| **VS.** ) | **Appeal No. 01A01-9708-CV-00413** |
| ) | |
| **JAN H. SCHMIDT,** ) | |
| ) | |
| Defendant/Appellee. ) | |

## APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE
## THE HONORABLE MURIEL ROBINSON, JUDGE

**ROBERT A. ANDERSON**
Nashville, Tennessee
Attorney for Appellant

**PHILIP E. SMITH**
Nashville, Tennessee
Attorney for Appellee

**AFFIRMED IN PART, REVERSED IN PART**
**AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

This is an appeal from a post-divorce non-jury hearing on an Amended Petition to Increase Support and for Contempt and on an Amended Counter Petition for sole custody of Jacqueline Schmidt ("Jacqueline"), the only child of the parties. Plaintiff/Appellant, Rozanne F. Wright ("Wright"), appeals the judgment of the trial court awarding her attorney's fees in the amount of $3,000; failing to award her costs of depositions incurred because of defendant/appellee's, Jan H. Schmidt ("Schmidt"), counter claim for sole custody that was dropped before proof was taken at trial; failing to require Schmidt to reimburse her for sums spent in procuring special education for Jacqueline prior to the November 20, 1996, hearing; failing to deviate upwards from the child support guidelines in awarding an increase in support; and allowing Schmidt to pay installment payments on back support judgment award. For reasons stated hereinafter, we affirm the judgment of the trial court in part and reverse in part.

The parties were divorced on July 21, 1986. There was one child of this marriage, Jacqueline. At the time of the divorce, Jacqueline was sixteen months old. The Final Decree provided, *inter alia*, that Wright was granted an absolute divorce from Schmidt, that Wright was awarded sole custody of Jacqueline, that Schmidt was to pay $325 per month in child support payable at $162.50 on the 1st and 15th of each month, that Schmidt was to obtain and maintain health insurance on Jacqueline and pay one half of Jacqueline's medical expenses not covered by insurance, that Schmidt was to make and maintain Jacqueline as sole beneficiary of all life insurance that was in effect on his life until Jacqueline reached the age of 18 or graduated from high school, and that Schmidt was to pay Wright $4,296.13 which was one half of the outstanding debt incurred by the parties for their mutual benefit during the marriage. There is evidence as to a private agreement entered into by Wright and Schmidt on August 15, 1987, whereby Schmidt was to pay Wright a lump sum of $4,500 on or before August 21, 1987, in order to constitute payment for various monies that Schmidt had been unable to pay prior to said agreement. In any event, the private agreement stated that it would be void if Schmidt did not pay the amount

2

by August 27, 1987.

In April of 1994 when Jacqueline was in third grade, she was state certified as learning disabled in word recognition and written expression skills. In May of that same year, Wright secured the services of Dr. Lois Degler to evaluate what type of educational support was needed to assist with Jacqueline's learning disability. Degler tutored Jacqueline twice a week in order to advance her reading and word recognition skills. Degler continued to tutor Jacqueline until May of 1995. Degler charged $40 per hour for the tutoring sessions with Jacqueline.

The Metropolitan Davidson County School System ("Metro") is required to conduct a meeting which is composed of an "M-Team."[1] This M-Team is composed of individuals who evaluate the educational needs of a particular child and suggest a plan whereby to obtain the appropriate education for the child with special educational needs. Degler accompanied Wright to this M-Team meeting. Metro sought an evaluation report on Jacqueline to define her educational difficulties. This aided in the formulation of an educational plan for Jacqueline that would be appropriate for her specific educational needs. The evaluation revealed that Jacqueline was learning disabled in the areas of basic word recognition and written expression skills.

In consulting this evaluation, the M-Team proposed that Jacqueline be enrolled in a special one hour writing program three times a week. In order to do this, Jacqueline would have to be absent during a portion of her reading class. Degler consulted with Wright and advised her that this proposal would not be acceptable. The M-Team offered for someone to work with Jacqueline on reading skills at some other point during the day, but Degler once again advised Wright against this proposal stating that she felt it was not acceptable. Degler was of the opinion that one-on-one instruction was appropriate given Jacqueline's particular difficulties.

---

[1] *See* 34 C.F.R. § 300.343; Tenn. Code Ann. § 49-10-103(a)

As a result of this meeting and of the M-Team's "unacceptable" proposal, Wright enrolled Jacqueline in Montessori Academy in the fall of 1994. Degler continued to tutor Jacqueline throughout the entirety of this time. Although Wright and Degler felt that Montessori Academy was an improvement, they did not believe it to be the optimal choice of education for Jacqueline. Consequently, in March of 1995, Wright enrolled Jacqueline at Benton Hall School. Benton Hall is a private school that specializes in teaching children with special education needs. The tuition at Benton Hall was $6,000 per year. Mrs. Ritchie Purcell, the principal of the elementary school at Benton Hall, testified via deposition. She stated that Benton Hall was the optimal education for Jacqueline.

While at Benton Hall, a battery of tests was performed on Jacqueline much like those performed on her by the Metropolitan Davidson County School System. Jacqueline was 11.5 years old at the time of testing. The test scores revealed that Jacqueline's only learning disability at this time was in her basic reading skills. Every other aspect of Jacqueline's testing fell within the standard range for children her age. Additionally, Jacqueline's report at Benton Hall School revealed that she is performing well in her studies.

Wright filed a petition to increase child support and for contempt on March 2, 1994. In the petition, Wright alleged, *inter alia*, that Schmidt had not paid child support as ordered, that he had failed to provide medical insurance, and that he should be enjoined and restrained from removing Jacqueline from the state of Tennessee. At the time, there was a motion for permission to take Jacqueline out of the state of Tennessee filed on or about June 17, 1994. Pursuant to the Order of June 24, 1994, the trial court entered an order setting certain visitation, as well as modifying the restraining order which enjoined and restrained Schmidt from removing Jacqueline from Tennessee. An answer to the petition to increase child support and for contempt and counter petition for joint custody was filed on October 19, 1994. Thereafter, on September 21, 1994, an agreed order was approved for a temporary interim increase in child support.

4

An amended petition to increase support and for contempt was filed on May 3, 1995. Schmidt filed an amended supplemental counter-petition on May 17, 1996, wherein he sought sole custody of Jacqueline. Wright filed an answer to this amended counter petition on September 6, 1996. There was also a motion to require Schmidt to pay one-half of the extraordinary educational expenses incurred due to the alleged special needs of the child filed on November 8, 1996.

The trial of this matter was set for November 20, 1996. At this hearing, Schmidt reneged on his petition for sole custody and orally amended the petition to be one requesting extended visitation. Although the trial was not completed, the trial court intended to take proof the following day on November 21, 1996. The trial court, however, did not hear the conclusion of the case until March 26, 1997. Pursuant to the amended order, the trial court specifically found that the appropriate amount of child support based upon Schmidt's gross income was $513 per month. The trial court further ordered 21% of any and all bonuses, after taxes, paid to Schmidt to be paid to Wright as reasonable child support. Additionally, the court found Schmidt in willful contempt, but found that because of the mitigating circumstances in the cause, Schmidt should not be sentenced to jail. The court awarded Wright child support arrearages in the amount of $12,858.33 with 12% interest to be paid out in monthly installments of $128.58. The court further found that Wright should be awarded $645.05 for funds not reimbursed toward the medical premiums. Wright was also awarded a judgment for reasonable attorney's fees in the amount of $3,000.

The parties raised the following issues for review by this Court:

> 1. Whether the trial court abused its discretion in limiting its award of reasonable attorney's fees to $3,000 in this litigation.
>
> 2. Whether the trial court abused its discretion in failing to award plaintiff any discretionary costs under Tenn. R. Civ. P. 54.04.
>
> 3. Whether the trial court erred in failing to award plaintiff any reimbursement for the sums for educational expenses expended by her prior to the final hearing on November 20, 1996.

5

4. Whether the trial court erred in failing to award an upward deviation from the child support guidelines because of the private educational expenses that plaintiff incurred for the parties' child.

5. Whether the trial court erred in granting defendant the opportunity to pay the child support arrearages in monthly installments.

### Attorney's Fees

Tenn. Code Ann. § 36-5-103(c) provides:

(c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

There is no absolute right to attorney's fees, but the award of attorney's fees in custody and support proceedings is familiar and almost commonplace. *See Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989). The trial court has a wide discretion in the award of attorney's fees that will not be modified except upon a finding of an abuse of discretion. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

Considering the unchallenged affidavit submitted by counsel for Wright, an inordinate amount of time was spent by Wright's counsel in this action not only enforcing a decree of child support previously ordered by the court but also in preparing for litigation over Schmidt's amended counter petition for sole custody filed with the court on May 17, 1996. Wright's counsel testified via affidavit that he spent approximately 55 hours in defending Schmidt's counter-petition and approximately 26 hours in prosecuting Wright's case. He further testified that his rate of pay was $200 per hour for a total of $16,340 in attorney's fees. Apparently, many of the hours expended by Wright's counsel were in preparation for litigation of the custody issue in Schmidt's counter petition and in enforcing the child support award previously issued by the trial court. Considering the total amount

6

of time spent either defending Schmidt's sole custody counter-petition or prosecuting Wright's claims for arrearages and increases in child support and in light of Tenn. Code Ann. § 36-5-103(c), it is unclear whether or not Wright was sufficiently compensated for attorney's fees necessitated by Schmidt. Consequently, we reverse the judgment of the trial court awarding Wright $3,000 in attorney's fees and remand this case for further proceedings necessary in determining appropriate attorney's fees.

## Discretionary Costs

Wright contends that the Trial Court erred in denying her motion for discretionary costs for the depositions taken in preparation for Schmidt's counter petition for sole custody. Costs were requested pursuant to Tennessee Rules of Civil Procedure 54.04. After reviewing Wright's request for said discretionary costs, the trial court denied the motion. The awarding of such costs is a matter within the sound discretion of the trial court. *Lock v. National Union Fire Ins.*, 809 S.W.2d 483 (Tenn.1991). There is no evidence in the record to indicate the trial judge abused her discretion.

## Past and Future Educational Expenses

Concerning the issue of past, present, and future private educational expenses, we are reviewing a finding of fact by the trial court. As such, we must conduct our review *de novo* upon the record, accompanied by a presumption of correctness of the finding of the trial judge. Reversal is only a possibility if the evidence preponderates against the finding of the trial judge or if the trial judge has committed an error of law. Tenn. R. App. P. 13(d).

In the case under submission, Wright contends that the trial court erred by not ordering Schmidt to reimburse Wright for the monies expended for private education costs prior to the November 20, 1996, hearing and in refusing to deviate upward from the child support guidelines in order to allow for present and future private education costs. We disagree.

The M-Team consisted of Shirley Claridge, the school psychologist; the principal of

the school; and two of Jacqueline's teachers. There was simply a disagreement between Wright's expert, Dr. Degler, and the M-Team concerning how to address Jacqueline's learning disability in word recognition and written language. Based upon the evidence in the record, Jacqueline's intelligence quotient (IQ) at her first testing at the age of nine was 111 for verbal IQ, 99 for performance IQ, and 106 for the full scale IQ. This places Jacqueline in the 66% percentile and well within the average range for children her age. Thereafter, when Jacqueline was eleven years and six months old, she was retested with the identical IQ test. Her performance and scores were very similar to those obtained at her first testing.[2] Additionally, we note that Jacqueline's report card is quiet impressive and replete with mostly A's and B's. We find that Jacqueline is a bright child who simply has moderate difficulty with word recognition. After a review of the evidence in its entirety, it is the opinion of this court that Jacqueline's word recognition difficulties did not merit extraordinary educational expenses in the past and do not merit such expenses at the present time. The trial court found that Jacqueline's educational difficulties did not meet the standard for "extraordinary educational needs" and thereby refused to order Schmidt to partially pay for past, present, and/or future private education. We agree and affirm accordingly.

### Installment Payments

At trial, the trial judge allowed Schmidt to make payment on his $12,858.33 in child support arrearages via monthly installment payments that were the equivalent of the interest that would accrue on such an amount.[3] While this conclusion is quite logical and sensible, it does not follow the statutes or case law of this state.

The Tennessee Supreme Court handed down an opinion in *Harrington v. Harrington*, 759 S.W.2d 664 (Tenn. 1988), that precisely confronted this issue of installment payments for child support arrearage awards. That Court properly pointed out that Tenn. Code Ann. § 26-2-216(a)(1) deals directly with installment payments for

---

[2]Verbal IQ = 99; performance IQ = 102; full scale IQ = 100.

[3]$128.58 monthly.

monetary awards. Tenn. Code Ann. § 26-2-216(a)(1) provides:

> (a)(1) After any judgment has been rendered in any court and the time to appeal therefrom has elapsed without such an appeal having been made, the judge of the court which rendered the judgment may, either before or after the issuance and service of garnishment, upon written consent of the parties or upon written motion of the judgment debtor, after due notice and after full hearing of such motion, enter an order requiring such judgment debtor to pay to the clerk of the court a certain sum of money weekly, biweekly or monthly to apply upon such judgment. The filing of such motion by the debtor shall stay the issuance, execution or return of any writ of garnishment against wages or salary due the judgment debtor or any other funds belonging to the judgment debtor sought to be substituted to the satisfaction or payment of or upon such judgment during the period that such judgment debtor complies with the order of the court. Such motion of the judgment debtor shall be supported by an affidavit stating his inability to pay such debt with funds other than those earned by him as wages or salary, or received from other sources in such amounts as to necessitate or make equitable installment payments, the name and address of his employer, or other source of funds and amount of such wages or salary, and the date of payment thereof.

This procedure was obviously not followed in the present case. From their inception, these statutes have required that a motion to pay a judgment in installments be filed and considered by the trial judge only after the judgment against the debtor has become final. *Harrington v. Harrington*, 759 S.W.2d at 667. Such a motion cannot be heard by the trial judge unless it is supported by an affidavit of the debtor stating his inability to pay with monies except for those "earned by him as wages or salary, or received from other sources in such amounts as to necessitate or make equitable installment payments." Tenn. Code Ann. § 26-2-216(a)(1) (Supp. 1997). When considering a motion for installment payments, the trial court should consider all the circumstances of both parties, as well as the amount of the judgment, other debts owed by and judgments against the debtor, the amount of wages earned by the debtor, other funds receivable by the debtor, and the exemptions granted by the statutes. *Id.* at 668.

In the case before us, at the request of counsel for Schmidt, the trial court ordered installment payments on the $12,858.33 child support arrearage judgment during the very hearing at which the trial court awarded an arrearage judgment for this sum. The judgment

9

had not become final. The written consent of the parties was never secured. There was no written motion on this matter. No affidavit was submitted by Schmidt that met the requirements of Tenn. Code Ann. § 26-2-216(a)(1) as seen in *Harrington*. There was no consideration of the financial circumstances of Schmidt or Wright. No hearing on such a motion was ever conducted. The requirements of Tenn. Code Ann. § 26-2-216(a)(1) and *Harrington* seem to have been ignored. Additionally, it appears on the face of the record that the installment payments set by the trial court are entirely too low in that the judgment can never be effectively discharged or even reasonably reduced. It further appears that the meager installment proceedings were irregularly conducted. As such, we feel justified, in our discretion, in reversing the judgment of the trial court on this issue. Accordingly, in light of *Harrington* and Tenn. Code Ann. § 26-2-216(a)(1), we reverse the decision of the trial court granting Schmidt the right to pay his child support arrearages in installment payments and remand to the trial court for consideration of this issue pursuant to the appropriate procedure.

The judgment of the trial court is affirmed in part, reversed in part, and remanded. Costs of this appeal are assessed equally between Jan Schmidt and Rozanne Wright, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.

10