**FILED**

**JUNE 3, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:53 PM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | |
|---|---|
| ALVIN POLLARD,<br>　　　　　Employee,<br>v.<br><br><br>JONES COMPANIES, LTD.,<br>　　　　　Employer,<br>And<br><br>FIRST LIBERTY INS. CORP.,<br>　　　　Insurance Carrier. | Docket No.: 2015-07-0338<br><br><br><br><br>State File Number: 73602-2014<br><br><br><br><br>JUDGE AMBER E. LUTTRELL |

### COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge for a Compensation Hearing on May 3, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Pollard requests permanent partial disability, future medical benefits, and discretionary costs. Jones Companies contends Mr. Pollard failed to establish entitlement to permanent partial disability for his left index and middle fingers or discretionary costs associated with his independent medical evaluation. The central legal issues are: (1) whether Mr. Pollard has established, by a preponderance of the evidence, permanent partial disability for injuries to the index, middle, and ring fingers of the left hand; (2) entitlement to future medical benefits; and (3) whether he is entitled to discretionary costs.[1] For the reasons set forth below, the Court finds Mr. Pollard is entitled to the requested benefits and discretionary costs.

### History of Claim

Mr. Pollard is a forty-one-year-old resident of Gibson County, Tennessee, who

---

[1] The parties stipulated to pertinent findings of facts set forth in the Appendix of this Compensation Order and more fully set forth in Exhibit 1.

1

worked for Jones as a card hand.[2] (T.R. 1.) He has a G.E.D. and training in mechanics. His job at Jones required him to work with machinery. On September 15, 2014, Mr. Pollard slipped while removing cotton clogged in a machine and caught his left hand in the machine crushing his left ring finger. While attempting to remove his hand from the machine, Mr. Pollard testified it "clipped the edge of my left index and middle fingers" and pulled his fingernails out of the nailbed. After he removed his fingers from the machine, he almost slipped again and injured the palm of his hand on a gear. Mr. Pollard is left-hand dominant.

Jones accepted Mr. Pollard's injury as compensable and provided authorized medical treatment.

Mr. Pollard sought emergency medical treatment at Jackson Madison County General Hospital (JMCGH) with Dr. John Sparrow, a plastic surgeon. Dr. Sparrow performed a partial amputation of Mr. Pollard's left ring finger at the distal phalanx. (Ex. 2 at 7.) Dr. Sparrow also performed a complex nail bed repair on the index and middle fingers and removed the nail plates. Lastly, he repaired a soft tissue laceration along the thenar eminence.[3]

During Mr. Pollard's follow-up treatment, Dr. Sparrow testified on the November 13, 2014 visit, "[h]e was still very tender along the tips of his fingers, having some hypersensitivity which is not unusual." *Id.* at 9. He treated Mr. Pollard for approximately four months with pain medication and, therapy, and also kept him off work. Dr. Sparrow last saw Mr. Pollard on January 6, 2015, and released him to return on an as-needed basis. At that visit, Mr. Pollard continued to report pain symptoms and Dr. Sparrow prescribed hydrocodone. The parties stipulated that Dr. Sparrow released Mr. Pollard on February 17, 2015, at maximum medical improvement (MMI) and assigned no permanent work restrictions. (Ex. 1.)

Upon attainment of MMI, Dr. Sparrow referred Mr. Pollard to Southern Hand Center for examination and evaluation of permanent impairment. Stephanie Bates, PT examined Mr. Pollard and assessed a 3% impairment to the body as a whole based upon the Diagnosis-Based model for amputation impairment of the American Medical Association's Guides to the Evaluation of Impairment, 6th Edition ("AMA Guides"). *Id.* at Depo. Ex 4. Following a review of the impairment evaluation report, Dr. Sparrow adopted the impairment rating. *Id.* at 19. Dr. Sparrow testified his 3% rating was based solely upon the amputation of the left ring finger. *Id.* at 13. He did not assign any additional impairment for Mr. Pollard's index or middle fingers. *Id.* at 14.

---

[2] Mr. Pollard testified his job involved twisting cotton weaves to roll into yard into barrels.

[3] The thenar eminence is located at the base of the thumb where the thumb joins the palm of the hand. (Ex. 2 at 7, 12-13.)

2

On cross examination, Dr. Sparrow testified he usually sends patients to Southern Hand Centers for impairment evaluations stating, "the Sixth Edition requires a lot of time." *Id.* at 18-19. He further stated the therapists at Southern Hand Centers are certified hand therapists. *Id.* at 20. When he receives the therapist's report, Dr. Sparrow reviews it and if necessary, he will discuss the findings with the therapist. *Id.* at 19. Dr. Sparrow agreed with Mr. Pollard's counsel that Ms. Bates' report did not mention any examination performed on Mr. Pollard's left index or middle fingers. *Id.* at 21. He testified the physical therapists test range of motion and grip strength in the whole hand in their physical examinations. However, he conceded Mr. Pollard's report only mentioned his left ring finger amputation in the impairment evaluation. *Id.* 20-21.

Dr. Sparrow explained his opinion for not assigning permanent impairment for the index and middle fingers by stating, "The injuries that he had on the index finger and his middle finger were not injuries that were going to give him a functional impairment. So I doubt very seriously if it would really alter the impairment rating." *Id.* at 22-23. Dr. Sparrow went on to state:

> And what we mentioned earlier, about phantom pain and even some—even occasional hypersensitivity or some occasional altered sensation, if it was constant and if it was day in/day out and it has persistent even, say, to this date which is a year and a couple of months beyond where he was in January 2015, then it may be worthwhile looking at that, having them do a Semmes-Weinstein test, and things like that. A lot of times, that is not out of the ordinary with an injury for a year–there are people who have phantom pain two and three years out. They only have it intermittently or sporadically, and it doesn't alter their functionality as far as the use of their hand. So that's why I say it may or may not affect his impairment.

*Id.* at 24-25. At his deposition, Dr. Sparrow reviewed two photographs of Mr. Pollard's hands taken by counsel for Jones on March 3, 2016. *Id.* at Depo Ex. 3. Dr. Sparrow did not observe any deformities of the index or middle finger that would alter his opinion regarding permanent impairment. *Id.* at 16.

Following his release from Dr. Sparrow, Mr. Pollard subsequently sought an independent medical evaluation with Dr. Samuel Chung on October 14, 2015. Dr. Chung noted Mr. Pollard reported difficulty gripping and with fine manipulation using his left hand. He further noted Mr. Pollard developed some degree of neuroma and numbness in the distal left index and middle fingers. (Ex. 3 at 7.) On physical exam, Dr. Chung found approximately 8% distal impairment due to the amputation level sustained in both the left index and middle fingers. *Id.* at 8. He further noted a complete loss of sensation at the distal tip, both in the ulnar and radial distribution of both fingers. *Id.* [4]

---

[4] The Court notes Mr. Pollard's counsel provided Dr. Chung drawings of the bones of the hand, arteries, and nerves

Dr. Chung reviewed Dr. Sparrow's records and the Southern Hand Center impairment report as part of his evaluation. *Id.* at 9. Based upon Dr. Chung's examination of Mr. Pollard's three fingers and his review of the treatment records, he diagnosed the following: "1) residual from left ring finger amputation at the proximal DIP joint; 2) residual from left index finger distal tip amputation with clinical signs and symptoms of digital neuroma[5]; and 3) residual from left middle finger distal tip amputation secondary to trauma with ongoing distal neuroma." *Id* at 9. Dr. Chung opined Mr. Pollard sustained permanent injuries to all three fingers arising primarily out of his traumatic injury to the left hand. *Id.* at 11 and 16.

In rating Mr. Pollard's injury, Dr. Chung also utilized the AMA Guides and agreed with Dr. Sparrow's rating of 3% to the body for the amputated ring finger. For the index finger, Dr. Chung assigned 1% to the body based upon the traumatic amputation of the tip of the finger and digital neuroma. For the middle finger, Dr. Chung assigned 1% to the body based upon the amputation of the tip and persistent neuroma. He testified the total combined impairment rating is 5% to the body as a whole. *Id.* at 14.

Dr. Chung reviewed and disagreed with Dr. Sparrow's opinion that Mr. Pollard sustained no permanent impairment to the index and middle fingers. He stated,

> I disagree with the fact that he did not assign any impairment rating for the index and the middle finger, mainly the distal tip laceration and the loss of the nail bed and nail plates which is the distal aspect of it. That is about 8 percent of the amputation of the distal hand.

*Id.* at 17.

Dr. Chung further testified that the AMA Guides, 6th Edition, would "clearly" require a rating for the injuries to the index and middle fingers based upon his findings. *Id.* at 18.

Mr. Pollard returned to work, full duty, at Jones in December 2014. In approximately March 2015, Mr. Pollard testified he began experiencing numbness, tingling, and cramping in his small and ring fingers, hand, and wrist. He reported to his supervisor, "Brandon," that "something is going on in my hand besides the fingertips."

---

of the hand and fingers attached as exhibits 1, 2, and 3 to Dr. Chung's deposition. (Ex. 3 at 9-10.) In his deposition, Dr. Chung marked on the drawings the specific location of Mr. Pollard's ring finger amputation and index and middle finger partial amputations/lacerations. The Court found these illustrations helpful in understanding the specific location of the injuries and nerves involved.

[5] Dr. Chung defined digital neuroma as an injury to the nerve endings at the digits causing a loss of sensation and hypersensitivity to the distal nerve. (Ex. 3 at 15-16.)

4

Mr. Pollard received medical care for a diagnosis of carpal tunnel syndrome, which is the subject of a separate workers' compensation claim.[6]

Mr. Pollard continued working for Jones until his termination on October 12, 2015. He subsequently worked for another employer for seven or eight days as a stand-up forklift operator. Mr. Pollard testified he quit the job due to difficulty with his left hand. He stated he occasionally experiences a "reflexive jolt" in his left hand and was concerned he could not safely drive the forklift. Mr. Pollard is currently unemployed.

Concerning the index and middle fingers, Mr. Pollard testified he continues to experience pain and sensitivity in the tips of his index and middle fingers and in the nail beds. He described a burning sensation and difficulty with daily activities such as zipping a zipper, buttoning a shirt, picking up a small object, and holding a pen to write. He further described "excruciating pain" if he bumps his index or middle finger into an object. Mr. Pollard testified Ms. Bates only examined his left ring finger during his evaluation at Southern Hand Centers. She did not touch, measure, or examine his index or middle finger. In contrast, he stated Dr. Chung examined, measured, and tested his sensitivity in all three fingers.

At the Compensation Hearing, Mr. Pollard argued he sustained permanent impairment to all three fingers injured on September 15, 2014, rather than just the ring finger. He required surgery on all three fingers. He complained to Dr. Sparrow of hypersensitivity in his fingertips at the next to last office visit, and required a prescription for pain medication for his ongoing symptoms at his last visit with Dr. Sparrow. Mr. Pollard asserted his testimony concerning his ongoing symptoms in his index and middle fingers combined with the testimony of Dr. Chung sufficiently rebutted the presumption of accuracy afforded to Dr. Sparrow regarding his permanent impairment.

Jones countered that Dr. Sparrow opined the injury to Mr. Pollard's index and middle fingers is not the type to give him any functional impairment, and Dr. Sparrow's impairment opinion, as the treating physician, is presumed accurate. It argued Dr. Chung's independent medical evaluation and rating for hypersensitivity occurred after Mr. Pollard was diagnosed with carpal tunnel syndrome in the same hand. Lastly, Jones argued an injury does not automatically entitle an employee to permanent impairment.

**Findings of Fact and Conclusions of Law**

At this Compensation Hearing, Mr. Pollard has the burden of proving all essential elements of his claim for permanent partial disability and medical benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *Scott v.*

---

[6] The Court notes the parties did not admit into evidence any medical records or other documentation concerning Mr. Pollard's carpal tunnel injury.

*Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

*Compensability and Medical Benefits*

The parties stipulated this is a compensable claim where Mr. Pollard sustained injuries to his left index, middle, and ring fingers. (Ex. 1.) The only issues the Court must address are the extent of permanent partial disability and Mr. Pollard's entitlement to discretionary costs. Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." As this is a compensable claim, the Court finds Mr. Pollard is entitled to reasonably necessary future medical treatment as recommended by his authorized treating physician, Dr. Sparrow, and as required by Tennessee Code Annotated section 50-6-204 (2015).

*Extent of disability*

For post-July 1, 2014 injuries, permanent partial disability is paid at sixty-six and two-thirds percent of the injured employee's average weekly wage for the period of compensation as determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 506-207(3)(A) (2015). The parties agreed Mr. Pollard is limited to these benefits and not entitled to any enhancement factors.

Dr. Sparrow assessed a 3% permanent impairment to the body as a whole pursuant to the AMA Guides. (Ex 2 at 13.) Dr. Chung, using the same reference, assessed a 5% permanent impairment. (Ex. 3 at 14.) Subject to rebuttal by a preponderance of the evidence, Dr. Sparrow's impairment rating is presumed accurate. Tenn. Code Ann. § 50-6-204(k)(7) (2015).

In considering the two ratings and analyzing whether Mr. Pollard has rebutted Dr. Sparrow's rating by a preponderance of the evidence, the Court notes Dr. Sparrow relied upon the physical examination and impairment evaluation of a physical therapist at Southern Hand Centers. He reviewed Ms. Bates' report and adopted the impairment rating only for the ring finger. Despite surgery, therapy, and Mr. Pollard's documented complaints of pain and hypersensitivity symptoms in the index and middle finger, the evidence demonstrated Ms. Bates did *not* examine Mr. Pollard's index or middle finger during the impairment evaluation. While Dr. Sparrow testified it is the practice of the therapists to examine range of motion in the entire hand, he conceded he was speculating regarding Mr. Pollard's specific exam since the report only mentioned the ring finger. The Court finds Mr. Pollard credibly testified Ms. Bates did not touch, measure, or examine his index or middle finger. The Court further notes Dr. Sparrow acknowledged

6

he has not seen Mr. Pollard since his last office visit of January 6, 2015, and does not know how he is currently doing with his injured fingers. At his last visit, Mr. Pollard registered symptoms of pain sufficient that Dr. Sparrow prescribed hydrocodone.

Turning to Dr. Chung's rating, the Court notes Dr. Chung performed his own physical examination and evaluation of Mr. Pollard and examined all three injured fingers rather than solely the ring finger. The Court further finds the only difference in his rating from Dr. Sparrow's was the additional 1% to the body for the index finger and a 1% to the body for the middle finger based upon the traumatic amputation of the tip of the fingers and persistent digital neuroma. Dr. Chung arrived at this additional impairment primarily utilizing figure 15-12 on page 458 of the AMA Guides, which is a table for rating digit impairment in the finger. In supporting his rating, Dr. Chung testified that the AMA Guides, 6th Edition, would "clearly" require a rating for the injuries to the index and middle fingers based upon his findings. In his deposition, Dr. Chung's methodology utilized in arriving at his impairment rating was unchallenged. The undisputed evidence demonstrated Dr. Chung's impairment rating complied with the AMA Guides.

Counsel for Jones did ask Dr. Chung how Mr. Pollard's symptoms of neuroma would compare to the carpal tunnel syndrome he was diagnosed with in March 2015. Dr. Chung responded:

> Well, it's two different things. First of all, one's a peripheral nerve injury and the other is-as mentioned above, there was a digital nerve problem. So, a digital nerve is a distal fingertips—they're micro nerves, and peripheral nerve is actually as stated, it's peripheral. Such as median nerve that is radiating into the distal hand. So peripheral nerve is completely different nerve connection than digital nerve.

(Ex. 3 at 24.)

Jones' counsel asked, "So his carpal tunnel symptoms would not have caused him to have any tingling or numbness in his fingers?" Dr. Chung replied,

> Not at the digital tip, per se. Now, you could have numbness in the whole median nerve distribution, but not particularly just at the tips where he had a amputation or the –yes, amputation. It's a partial amputation, of course, and losing the tips of the fingers, but, no, that would not constitute as a median nerve neuropathy.

*Id.* at 25.

Based upon Dr. Chung's uncontradicted testimony, the Court finds the symptoms

7

Mr. Pollard reported to Dr. Chung supporting his impairment rating in the index and middle fingers did not result from Mr. Pollard's carpal tunnel condition. The Court further finds Dr. Chung's impairment opinions were consistent with Mr. Pollard's testimony at the Compensation Hearing.

Mr. Pollard credibly testified he continues to experience pain and sensitivity in the tips of his index and middle fingers and in the nail beds. He described a burning sensation and difficulty with daily activities such as zipping a zipper, buttoning a shirt, picking up a small object, and holding a pen to write. He further described "excruciating pain" if he bumps his index or middle finger into an object.

Based upon a preponderance of the evidence, the Court finds Mr. Pollard has rebutted the presumption of accuracy of Dr. Sparrow's rating and sets the impairment rating at 5% to the body as a whole. It follows that Mr. Pollard's permanent partial disability is 450 weeks multiplied by 5%, a period of twenty-two and one-half weeks. At his stipulated compensation rate of $491.75, Mr. Pollard is entitled to permanent partial disability benefits totaling $11,064.38.

### Discretionary costs

Mr. Pollard filed a Motion to Assess Discretionary Costs. (T.R. 10.) Mr. Pollard also filed a Bill of Costs totaling $1,138.10, itemized as follows:

1. Deposition fee of Dr. Samuel Chung     $750.00
2. Dr. Chung's deposition transcript fee     $143.80
3. Plaintiff's deposition transcript fee     $177.60
4. Dr. Sparrow's deposition transcript fee     $66.70

Mr. Pollard argued these costs were reasonable and necessary in the preparation for trial in this action and are recoverable costs pursuant to Tennessee Rule of Civil Procedure 54.02(2) and 59.01. Jones filed an Objection in Opposition to Employee's Motion for Discretionary Costs. (T.R. 11.) Jones argued Mr. Pollard is not entitled to deposition or court reporter costs associated with the independent medical evaluation of Dr. Chung. It contended Tennessee Code Annotated section 50-6-204(c)(1) and (d) limits the award of discretionary costs only to those fees charged by a treating physician or when an employer fails to furnish appropriate medical care pursuant to a settlement or judgment. At the Compensation Hearing, Jones conceded Mr. Pollard is entitled to the transcript fee for Dr. Sparrow's deposition of $66.70, but maintained the remaining costs are disputed.

The Court finds the controlling statute is Tennessee Code Annotated section 50-6-239(c)(8) (2015), which provides, "The workers' compensation judge may, in his discretion, assess discretionary costs including reasonable fees for depositions of medical

8

experts against the employer upon adjudication of the employee's claim as compensable." This statute allows the Court to award discretionary costs for such expenses as reasonable expert deposition fees. Otherwise, the statute is silent as to what costs might be recoverable. However, Tennessee Rule of Civil Procedure 54.04(2) also provides for the recovery of certain discretionary costs. *See also Lock v. Nat'l Union Fire Ins. Co.*, 809 S.W.2d 483, 489 (Tenn. 1991).

Here, Mr. Pollard requests recovery of Dr. Chung's deposition fee, and the court reporter deposition transcript fees associated with the depositions of the plaintiff, Dr. Sparrow, and Dr. Chung. In light of the Court's reliance on the testimony of Dr. Chung in finding Mr. Pollard successfully rebutted the presumption of accuracy afforded to Dr. Sparrow, the Court finds the fees requested by Mr. Pollard were reasonable and necessary costs for the preparation of this case. Accordingly, Mr. Pollard's Motion for Discretionary Costs is hereby granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Pollard shall recover from Jones Companies, LTD, permanent partial disability benefits in the amount of $11,064.38, representing a 5% permanent partial disability to the body, or 22.5 weeks of compensation at the stipulated compensation rate of $491.75. These benefits, having accrued, are payable in a lump sum. **Mr. Pollard's PPD award is subject to the child support lien notice admitted into the Technical Record as Exhibit 8.**

2. Mr. Pollard shall receive lifetime future reasonable, necessary, and related medical benefits pursuant to statute.

3. Mr. Pollard is awarded a total amount of $1,138.10 for discretionary costs to be paid by Jones Company.

4. Mr. Pollard's attorney is awarded an attorney's fee of twenty percent and any incurred expenses to be paid from Mr. Pollard's award.

5. Costs of this cause of $150.00 are assessed against Jones Companies, LTD, pursuant to Tenn. Comp. R. and Reg. 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

**ENTERED this the 3rd day of June, 2016.**

_____
**Judge Amber Luttrell**
**Court of Workers' Compensation Claims**

9

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal your case to the Workers' Compensation Appeals Board, you must:

1.  Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3.  Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be

docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the parties have fifteen calendar days to submit briefs to the Appeals Board for consideration. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(3) (2015).

To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be "final" (*see* Tennessee Code Annotated section 50-6-239(c)(7)) and you must comply with the Tennessee Rules of Appellate Procedure.

APPENDIX

Exhibits:

1. Pre-Compensation Hearing Statement;
2. Deposition Transcript of Dr. John Gregory Sparrow;
3. Deposition Transcript of Dr. Samuel Chung.

Technical record:[7]
1. Petition for Benefit Determination;
2. Pre-Discovery Dispute Certification Notice;
3. Request for Initial Hearing;
4. Post Discovery Dispute Certification Notice and Petition for Benefit Determination for Discretionary Costs;
5. Plaintiff's Prehearing Statement;
6. Plaintiff's List of Witnesses and Exhibits;
7. Employer's Pre Compensation Hearing Brief;
8. Department of Human Services letter concerning child support lien;
9. Plaintiff's Motion to Assess Discretionary Costs;
10. Plaintiff's Verified Bill of Costs;
11. Employer's Response in Opposition to Employee's Motion for Discretionary Costs.

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

12

Stipulations of Fact:

1. Mr. Pollard's date of injury is September 15, 2014.

2. Mr. Pollard sustained a compensable work injury for which he received authorized medical treatment with Dr. John Sparrow.

3. Mr. Pollard reached maximum medical improvement on February 17, 2015.

4. Mr. Pollard received TTD and TPD benefits. No additional temporary benefits are owed.

5. Mr. Pollard initially returned to work for Jones, but was terminated on October 12, 2015. No additional multiplier factors apply.

6. Mr. Pollard's average weekly wage is $737.58 and compensation rate is $491.75.

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 3rd day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| David Hardee, Esq., Employee's Counsel | | | X | kperry@hmdlaw1.com |
| Shateera Reed, Esq., Employer's Counsel | | | X | Shateera.Reed@libertymutual.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

14