IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS JANUARY 31, 2011

## ANTHONY V. JACKSON v. GINGER JACKSON

**Direct Appeal from the Chancery Court for Franklin County
No. 16,559      Jeffrey F. Stewart, Chancellor**

**No. M2010-00575-COA-R3-CV - Filed March 30, 2011**

This appeal involves countless motions filed over a period of nearly nine years following the parties' contentious divorce. The mother appeals, challenging numerous rulings by the trial court. We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Reversed in Part, Vacated in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and HOLLY M. KIRBY, J., partially dissented.

Ginger Jackson, Hillsboro, Tennessee, *pro se*

Karen Sedora Price, Tullahoma, Tennessee, for the appellee, Anthony V. Jackson

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Anthony V. Jackson ("Father") and Ginger Jackson ("Mother") were divorced by decree on December 28, 2001. Just days before the final decree was entered, Mother was arrested and charged with solicitation to commit first degree murder after she allegedly attempted to hire someone to poison Father. On June 4, 2003, Mother was found guilty of the charged offense and sentenced to eight years and six months of incarceration.

Both before and after Mother's incarceration, she filed, through attorneys and then acting pro se, what the trial court described as "innumerable motions" relating to the divorce decree and other related issues. However, she later requested that the matter be continued until after she was released from incarceration. Mother was released from prison on or about March 21, 2008, and the trial court proceedings resumed.

Following a hearing, the trial court entered an order on October 30, 2009, resolving at least fourteen pending motions and filings submitted by Mother and Father.[1] Following another hearing, the court entered another order on April 23, 2010, addressing Mother's contempt allegations against Father. Mother timely filed a notice of appeal to challenge various rulings of the trial court.

### II. ISSUES PRESENTED

Mother's brief is somewhat difficult to follow, as it makes numerous allegations and addresses various issues throughout. However, the issues that she designates for review on appeal, which we will consider, are slightly reworded as follows:

1. Whether the trial court erred in failing to award Mother post-judgment interest for her marital share of the retirement fund;
2. Whether the trial court erred in failing to alter or amend the valuation of Father's retirement fund to the amount of the actual payout;
3. Whether the trial court erred in altering the value of Mother's interest in the retirement fund due to unpaid judgments;
4. Whether the trial court erred in failing to award statutory interest on the child support arrearage that Father was ordered to pay in the final divorce decree;
5. Whether the trial court erred in ordering Mother to pay interest on unpaid child support;

---

[1] An amended order was entered November 9, 2009, to correct a computation error.

6.      Whether the trial court erred in failing to award Mother a judgment based on Father's dissipation of marital assets, misconduct, and contempt; and

7.      Whether the trial court erred in denying Mother's request for attorney's fees and costs.

For the following reasons, we affirm the decision of the chancery court in part, and we reverse in part and remand for further proceedings.

## IV.  DISCUSSION

### A.      *The Award from the Retirement Fund*

The parties were divorced by a final decree entered December 28, 2001.  Although the final decree of divorce is not included in the record before us, a subsequent order entered by the trial court states that the final decree "directed the parties to ascertain the fair market value of their 401K plans and determine the value of [Father's] Sverdrup savings plan and of his Jacobs stock holdings as of the close of business on November 12, 2001."  The final decree "further directed the parties [to] prepare an appropriate qualified domestic relations order providing for an equal division of these assets or in the alternative to allow the parties to resolve any disparity in their retirement plans with a cash payout."  After the final decree was entered, the parties attended a settlement conference and attempted to resolve all of their differences, including the provision of their respective pension and retirement plans.  However, an agreement was never signed, and the issue regarding the parties' retirement plans remained unresolved.

In 2003, Mother filed motions requesting that the trial court enter either a final order or a QDRO to resolve the matter.  Following a hearing, the trial court entered an order on August 31, 2004, in which it found, "from all the testimony and the evidence presented," that the value of Mother's pension on November 12, 2001, was $46,144, and the total value of Father's accounts as of November 12, 2001, was  $139,737.[2]  Therefore, the court determined, the parties would divide the difference equally, and Mother would be entitled to an interest in Father's accounts valued at $46,796.50.  In addition, the court found that Father had failed to pay $2,500 in back child support to Mother, as ordered in the final divorce decree.  However, the court also found that Mother had failed to pay $14,000 due to Father under the divorce decree for her dissipation of marital assets.  The court took these amounts into consideration, effectively adding $2,500 to Mother's award from the retirement fund, but subtracting $14,000 for her unpaid judgment, to conclude that Mother was entitled

---

[2]  Specifically, the court valued Father's Vanguard Savings Account as of November 12, 2001, at $92,543, his Jacobs stock at $5,608, and his pension fund at $41,586, for a total combined value of $139,737.

to an interest in Father's pension plan valued at $35,296.50. The court then ordered that Father was entitled to pay the amount of $35,296.50 in lieu of entering into a QDRO, "[t]he said amount to be paid within 30 days from the date this order becomes final." Because Mother had been ordered to pay child support, Father was directed to pay the amount owed to Mother to the court clerk to be held "for the benefit of paying child support" of the parties' son while Mother remained incarcerated. The parties were directed to enter a QDRO if Father elected against the cash payout.

Both parties filed motions to alter or amend the trial court's order, along with numerous responses, which were not immediately addressed by the trial court. Mother subsequently moved for a continuance until she was released from incarceration. After her release, the trial court held a hearing on the motions to alter or amend, along with many other motions, on September 10, 2009, and it entered an order resolving the issues on October 30, 2009. We do not have a transcript of the hearing in the record before us, but the court's order states that it heard testimony from various witnesses. The court again found that the value of Mother's interest in Father's pension should be set at $35,296.50, as stated in the order from 2004, but the court reduced Mother's interest upon finding that a $27,620.95 child support arrearage had accrued since she was incarcerated, so that her remaining interest in Father's pension was found to be $7,675.55. The parties subsequently executed a QDRO providing for the payment of benefits in that amount.

## 1. Post-Judgment Interest

The trial court noted in its order that Mother had sought post-judgment interest on the pension award, and it rejected her request as follows:

[Mother] is not entitled to post-judgment interest on this award under T.C.A. § [47-14]-121–122. Statutory interest does not begin to accrue until the party awarded becomes entitled to the money. A timely Rule 59.04 Motion to Alter or Amend that necessitates a hearing suspends the original judgment from becoming final until the court can hear the claims raised in the motion and make a ruling. The August 31, 2004 order awarding [Mother] an interest in [Father's] pension provides that [Father] is entitled to pay [Mother] $35,296.50 in lieu of entering into a qualified domestic order with said amount to be paid within 30 days of the order becoming final. [Father] filed a timely Motion to Alter or Amend within 30 days of the August 31, 2004 order. Consequently, the original order did not become final until the Court heard the Motion to Alter or Amend and entered this final order. Thus, [Mother] is not entitled to post-judgment interest on the award granted in the August 31, 2004 order because [Father's] option to pay [Mother] in lieu of entering into a QDRO did

-4-

not come into being until 30 days after the order became final, which did not occur until the Court ruled on the Motion to Alter or Amend.

(citations omitted).  On appeal, Mother contends that the trial court erred in failing to award post-judgment interest on her award from Father's pension because post-judgment interest is mandatory.  While we recognize that the post-judgment interest statute is mandatory, that "does not mean that the party securing the judgment may have interest on the entire judgment unless he is entitled to have the use of the proceeds of the judgment from and after the date the judgment was entered."  *West American Ins. Co. v. Montgomery*, 861 S.W.2d 230, 232 (Tenn. 1993) (citing *Price v. Price*, 225 Tenn. 539, 472 S.W.2d 732 (1971)).

We agree with the trial court's conclusion that Mother was not entitled to post-judgment interest since the date of the August 31, 2004 order.  That order allowed Father to either enter a QDRO or pay Mother $35,296.50 "to be paid within 30 days from the date this order becomes final."  Thus, Father was not required to pay Mother for her interest in the pension until the August 31, 2004 order became final.  After the order was entered, both parties filed motions to amend the order, which were not addressed until the entry of the October 30, 2009 order.  An order that is subject to a pending, timely-filed motion to alter or amend does not constitute a final judgment.  *See Watts v. Kroger Co.*, 102 S.W.3d 645, 646-47 (Tenn. Ct. App. 2002).  Thus, the trial court did not err in refusing to award Mother post-judgment interest since August 31, 2004.

Mother also argues on appeal that she was entitled to post-judgment interest since the date of the original divorce decree in 2001.  As noted above, the divorce decree instructed the parties to determine the value of their retirement plans, and it provided that the parties could either enter a QDRO providing for the payment of benefits to divide the assets or resolve any disparity with a cash payout.  Again, the divorce decree is not in the record before us, but according to Mother, it provided that the parties were to submit an agreed order detailing the terms of any agreement they reached if they chose to pursue a cash payout.  An agreed order was never entered, and neither was a QDRO.  The trial court eventually determined that Mother was entitled to an interest in Father's accounts, as stated in the August 31, 2004 order, based upon the evidence presented at a February 2004 hearing.  Because the divorce decree gave the parties the option of entering into a QDRO for the payment of benefits or entering into an agreed order regarding a cash payout, with no apparent deadline for choosing either, we find that the divorce decree itself did not award Mother a money judgment or entitle her to the immediate use of any funds.  As such, Mother was not entitled to post-judgment interest dating back to the original divorce decree.  *Cf. Hofmeister v. Hofmeister*, No. M2000-00363-COA-R3-CV, 2001 WL 1566068, at *5 (Tenn. Ct. App. Dec. 10, 2001) (explaining that the post-judgment interest statute applies to money awards in divorce decrees, but that it did not apply to a $700 insurance check that the

husband was ordered to deliver to the wife).

### 2. Valuation of Father's Pension Fund

Next, Mother challenges the trial court's valuation of Father's pension fund. In its August 31, 2004 order, the trial court found that the total value of Father's accounts as of November 12, 2001, was $139,737, and that the value of his "pension fund" as of November 12, 2001 was $41,586. On appeal, Mother contends that the trial court should have subsequently altered the valuation of the pension fund because Father lost his job and received an actual cash payout of $69,236 in September of 2004. The trial court denied Mother's request to alter the valuation and continued to utilize the valuation as of November 12, 2001. We find no error in the court's decision. The parties were divorced by decree as of December 28, 2001, and the divorce decree ordered that the parties' retirement accounts would be valued as of November 12, 2001, which was apparently the date of the final hearing. Marital property is to be valued "as of a date as near as reasonably possible to the final divorce hearing date." Tenn. Code Ann. § 36-4-121(b)(1)(A). If Father's pension fund was valued as of the date of its actual payout in September 2004, nearly three years after the divorce decree, it would, presumably, have included amounts attributable to Father's post-divorce contributions. Therefore, Mother's request for an amended valuation was properly denied. Due to our resolution of this issue, we also reject Mother's argument that she was entitled to an additional award of post-judgment interest based on the proposed amended valuation amount.

### 3. Modifications to Mother's Interest in the Pension Fund

Mother argues on appeal that the trial court erred in its August 31, 2004 order because, after it found that she was entitled to an interest in Father's accounts valued at $46,796.50, it added an additional $2,500 to that amount upon finding that Father had failed to pay $2,500 in back child support as ordered in the final decree of December 28, 2001, and it also subtracted $14,000 from her award based upon an amount that Mother had failed to pay under the decree for disposing of marital assets. Mother cites no authority in support of her argument that the trial court erred in offsetting these obligations. We find no error in the trial court's decision to reduce Mother's marital share of Father's pension by the amount of the unpaid judgment for her dissipation of marital property. Regarding the child support judgment, we note that in some cases, courts have held that it is improper to offset a child support arrearage judgment owed by a non-custodial parent against a debt owed by a custodial parent, because, "'[t]o allow a set-off under these circumstances would amount to requiring the children to pay the debts of the custodial parent.'" *See **Swoffard v. Pino-McClarty***, No. 03A01-9707-CV-00454, 1998 WL 202478, at *3 (Tenn. Ct. App. Apr. 28, 1998) (quoting *Oliver v. Oczkowicz*, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990)).

However, those concerns are not present in the instant case due to the fact that it was Father who had custody of the parties' son, while Mother had a complete lack of visitation or contact with him. Because Mother cites no authority that would entitle her to relief on this issue, we affirm the trial court's decision to offset these obligations.

### B.    Child Support Arrearages

### 1.    The Arrearage Owed by Father

Next, Mother argues that the trial court should have added interest to the $2,500 child support arrearage that Father had been ordered to pay in the 2001 divorce decree and that the trial court found had not been paid at the time of the February 2004 hearing. The child support arrearage was discharged in the August 31, 2004 order after it was added to Mother's share of the pension. Mother did not raise an issue regarding an award of interest due on the child support arrearage until September 10, 2009, the date of the trial court's hearing regarding the numerous outstanding motions and filings submitted by the parties. In a "Response" filed that morning, Mother claimed that the $2,500 judgment had never been paid and that Father should be required to pay the $2,500 judgment in addition to statutory interest from the date of the original divorce decree in 2001. The trial court found that "[Father's] obligation to pay $2,500.00 to [Mother] in back child support was fully discharged as of the entry of the Order dated August 31, 2004, as this figure was credited to [Mother] in the Court's calculation of the amount of [her] entitlements to the retirement and pension accounts of Plaintiff." The order further states that the $2,500 judgment was no longer owed to Mother "and any motions or arguments to the contrary are denied." However, it did not expressly address the issue of interest owed on the unpaid arrearage.

> Tennessee Code Annotated section 36-5-101(f)(1) provides, in relevant part:[3] If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage, at the rate of twelve percent (12%) per year.

"The aforementioned language is clearly mandatory regarding the accrual of interest on arrearages." **Gibson v. Prokell**, No. W2000-01236-COA-R3-CV, 2001 WL 935461, at *7 (Tenn. Ct. App. Aug. 15, 2001) *perm. app. denied* (Tenn. Feb. 19, 2002). We recognize that Mother's argument regarding an award of statutory interest was raised at the last minute, but

---

[3] Tennessee Code Annotated section 36-5-101(f)(1) specifically governs post-judgment interest on child support arrearages, and it is the statute that is applicable to the issue before us. *See* **Sandusky v. Sandusky**, No. M2000-00288-COA-R3-CV, 2001 WL 327898, at *8 (Tenn. Ct. App. Apr. 5, 2001).

nevertheless, it was raised prior to the hearing at which the trial court considered the parties' motions regarding the August 31, 2004 order, which is the order that discharged Father's child support arrearage and added it to the amount of Mother's pension award. If the August 31, 2004 order had already become final when Mother raised the issue, the doctrine of res judicata would have barred Mother from asserting that statutory interest was owed for the period preceding August 31, 2004. *See* ***State, ex rel. Cottingham v. Cottingham***, No. M2008-02381-COA-R3-CV, 2010 WL 2943283, at *4 (Tenn. Ct. App. W.S. July 27, 2010) *perm. app. denied* (Tenn. Jan. 12, 2011). However, when Mother raised the issue regarding statutory interest owed on the child support arrearage, the order that she challenged had not yet become final. As such, we conclude that the trial court erred in failing to assess statutory interest on the unpaid child support arrearage in accordance with Tennessee Code Annotated section 36-5-101(f)(1). We remand for the trial court to calculate the interest award in accordance with the statute.

## 2.    The Arrearage Owed by Mother

Next, Mother claims that the trial court erred in calculating her unpaid child support arrearage and in assessing statutory interest on the arrearage. Mother had been ordered to pay child support in the August 31, 2004 order at the rate of $300 per month, effective July 10, 2003, which was when Father had filed a petition to modify seeking such support.[4] Mother challenged the child support award in her motion to amend. At the September 2009 hearing, when the court resolved the numerous motions filed by the parties, it refused to alter the $300 child support award and determined that Mother owed $22,400 in child support arrearages dating back to July 10, 2003, plus interest in the amount of $10,392, for a total child support arrearage of $32,792.

Mother contends that because the August 31, 2004 order requiring her to pay child support did not become final until the motions to alter or amend were heard in 2009, she cannot be required to pay child support or interest on the award for the period prior to the entry of the final order. We disagree with Mother's contention that she is excused from paying child support during that period. Both parents have an obligation to support their minor children even if an order awarding child support has not yet been entered. *See **Smith v. Smith***, No. E2009-01593-COA-R3-CV, 2010 WL 3715590, at *2 (Tenn. Ct. App. Sept. 22, 2010) (citing *Bjork v. Bjork*, 1997 WL 653917 (Tenn. Ct. App. Oct. 22, 1997)). Therefore, Mother is not entitled to avoid her child support obligation simply because the order requiring her to pay such support was the subject of pending motions to alter or amend until 2009. She still owes child support for the period preceding the entry of the final order.

---

[4] The court found that although Mother was incarcerated, she had sufficient assets to justify the child support award. Prior to the August 31, 2004 order, Mother had not been ordered to pay child support.

The issue of interest during that period is not so easily resolved. Neither party has cited a case involving facts similar to those before us. As stated above, Tennessee Code Annotated section 36-5-101(f)(1) provides, in relevant part, that unpaid child support is in arrears "[i]f the full amount of child support is not paid by the date when the ordered support is due," and interest accrues "from the date of the arrearage, at the rate of twelve percent (12%) per year." The August 31, 2004 order set Mother's child support obligation at $300 per month, retroactive to July 10, 2003, which was when Father had filed a petition to modify seeking child support. However, both parties filed motions to amend the August 31, 2004 order. During the pendency of a motion to alter or amend, a judgment is suspended.[5] *Farris v. Farris*, 1991 WL 134531, at *2 (Tenn. Ct. App. W.S. July 24, 1991) (citing *Webb v. Aetna Life Ins. Co.*, 496 S.W.2d 511 (Tenn. Ct. App.1973)). "'[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is *not enforceable* or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of the parties.'" *Levy Wrecking Co. v. Centex Rodgers, Inc.*, No. M2005-01196-COA-R3-CV, 2006 WL 2855155, at *3 (Tenn. Ct. App. Oct. 6, 2006) (quoting *Grissim v. Grissim*, 637 S.W.2d 873, 875 (Tenn. Ct. App. 1982)) (emphasis added); *see also* Tenn. R. App. P. 3(a). "The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). Thus, the trial court retains jurisdiction over a case while a timely filed motion to alter or amend is pending, Tenn. R. App. P. 4(e), and any proceedings to enforce a judgment shall be stayed pending entry of an order resolving a motion to alter or amend, and for 30 days thereafter. Tenn. R. Civ. P. 62.02.

The Eastern Section of this Court recently addressed a situation involving the effect of a motion to alter or amend on the enforceability of an order requiring the payment of alimony. In *Forgey-Lewis v. Lewis*, No. E2009-00851-COA-R3-CV, 2011 WL 332710, at *6 (Tenn. Ct. App. Jan. 28, 2011), the trial court entered an order resolving most of the issues from the parties' divorce and requiring the husband to pay alimony retroactive to the date of the complaint for divorce. The order was certified as final pursuant to Rule 54.02, and the

---

[5] We note that some cases state that a motion to alter or amend "is effective to suspend [the] time for appeal until the trial court rules upon the motion. Such a motion that is not timely filed does not suspend the finality of the judgment." *McWhorter v. McWhorter*, No. M2005-00359-COA-R3-CV, 2006 WL 140406, at *2 (Tenn. Ct. App. Jan. 17, 2006); *see also Nagarajan v. Scheick*, No. M2000-02323-COA-R3-CV, 2003 WL 22989029, at *3 n.3 (Tenn. Ct. App. Dec. 19, 2003). These cases discuss the effect of a motion to alter or amend on the time for filing a notice of appeal, but they do not contradict our statement in *Farris* that "the judgment is suspended" during the pendency of a motion to alter or amend. 1991 WL 134531, at *2. In fact, the *McWhorter* case seems to suggest that a timely filed motion to alter or amend does suspend the finality of the judgment. 2006 WL 140406, at *2. That is exactly what this Court stated in *Farris*.

husband filed a motion to alter or amend, which was eventually denied. Before the motion to alter or amend was addressed, however, the wife caused numerous garnishments to be issued for the collection of the alimony. *Id.* at *7. One of those garnishments caused $5280 to be taken from the husband's bank account. The husband argued that the garnishment should have been quashed "because the judgment was the subject of a motion to alter or amend and had not become final when the Garnishment was issued and served on the bank." On appeal, the Eastern Section agreed, resolving the issue as follows:

> Another argument that Husband makes is that the Garnishment was issued before entry of the final judgment and therefore violated Tenn. R. Civ. P. 62.01. Rule 62.01 provides, in pertinent part, that subject to certain limited exceptions "no execution shall issue upon a judgment, nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry." In the event of a motion to alter or amend, the stay is extended "pending and for 30 days after entry" of the order granting or denying the motion. Tenn. R. Civ. P. 62.02. . . . As we see it, Wife offers nothing to show that this case fits within a recognized exception to the general rule, and we are not aware of any obvious exception. . . . Accordingly, we conclude that the Garnishment should have been quashed and that the monies paid into the court by the garnishee should have been returned to the garnishee.

*Id.* at *13. Thus, in **Forgey-Lewis**, the wife could not take action to enforce the alimony obligation while the motion to alter or amend was pending.[6] We believe that the Court's reasoning would apply to orders containing other obligations as well, such as child support, or the division of marital property.

Again, the statute authorizing the assessment of interest on child support awards provides that child support is in arrears "[i]f the full amount of child support is not paid by the date when the ordered support is due," and interest accrues "from the date of the arrearage." Tenn. Code Ann. § 36-5-101(f)(1). Keeping the aforementioned principles in mind, we conclude that Mother did not fail to pay child support "by the date when the ordered support [was] due" because the order requiring her to pay such support was not final

---

[6] We note that the **Forgey-Lewis** Court did express concern about whether its holding would counteract the ability of a trial court to enforce an award of alimony *pendente lite*. *Id.* at *13-14. However, the Court stated that it had, "surprisingly, found no law on the interaction of Rule 62.01 with the ability of trial courts to enforce awards of alimony *pendente lite* by execution, which seems to be a given according to 19 Tennessee Practice, Garrett § 10.2 (2007)." *Id.* at *14. It also noted that the award at issue in **Forgey-Lewis** was not was not a *pendente lite* award. *Id.* The child support award before us in this case is not a *pendente lite* award either, so we will not discuss the enforcement of such awards.

or enforceable until the motions to alter or amend were resolved in 2009. Therefore, we agree with Mother's assertion that it was improper for the trial court to assess statutory interest on the award of child support for that period of time, and we vacate the $10,392 award of interest.

### C. Allegations of Contempt against Father

Mother also argues on appeal that the trial court erred in failing to award her a judgment based upon Father's "dissipation of marital property" and "contempt by misconduct, misrepresentation, defiance, and bad faith."

The final decree of divorce had ordered that the parties' farm and other properties be sold at auction. In July of 2002, Mother filed a petition for contempt alleging that Father had removed personal property "valued at several thousands of dollars" from the farm that was to be sold. The trial court addressed the petition for contempt at a hearing on March 26, 2010,[7] at which Mother testified as to her allegations. She claimed that Father had "a passion for tools" and that they had owned hundreds of thousands of dollars in hand tools during their marriage. Mother claimed that there were over fifty toolboxes full of tools at the parties' property, and that when the auctioneer came to inventory the property prior to the auction, the tools were gone. Mother alleged that Father had broken into the property and stolen the tools. She claimed that she had gone to the house where Father was living at the time and found the tools in the house. She testified that she filed a police report of the incident but that Father was not arrested. Mother introduced various photographs of tools, which she claimed portrayed the tools that were located at the parties' farm that should have been sold. She introduced additional photographs of tools lying on a floor, which, according to Mother, were the stolen tools she found at Father's house. However, the photographs were not dated, and Mother testified that she could not provide a date of when they were taken. Mother also introduced invoices from the purchase of some tools in an attempt to show that the tools were purchased during the parties' marriage, not prior to the marriage, as Father had claimed during the divorce proceedings. Mother testified that the tools allegedly stolen by Father would be valued at "upwards toward $80,000." Mother conceded that she did not raise this issue at any of the court's prior hearings.

The trial court entered an order addressing the contempt allegations on April 23, 2010. The court noted that the final decree of divorce had awarded "a substantial amount of

---

[7] In the court's order entered after the 2010 contempt hearing, it noted that numerous hearings had occurred involving the presentation of proof on several issues since the filing of Mother's petition for contempt, and "[a]t no time during these proceedings was the issue of the Contempt alleged in the 2002 Petition brought to this Court's attention[.]"

personal property" to Father as his separate property because it was determined that he had inherited such property from his parents. This property included "a number of tools and pieces of equipment." The trial court determined that the many items awarded to Father in the final decree could have been the items shown in the photographs presented by Mother at the hearing. The court also noted inconsistencies in Mother's testimony. The court then concluded that Mother had failed to carry her burden of proving that Father had removed personal property of the parties that should have been included in the sale.

The court did find that Father was in contempt for failure to execute a QDRO in compliance with court orders, but the court stated that it would not impose sanctions or penalties for the contempt because of the numerous other financial issues existing between the parties. The court ordered Father to execute a QDRO within sixty days, and a QDRO was subsequently executed and filed with the court.

Mother argues on appeal that we should reverse the trial court's findings because she sufficiently carried her burden of proving that Father removed marital property from the farm, especially in light of the fact that Father was not present at the hearing to testify or deny the allegations. However, we are not inclined to second-guess the trial court's decision on this matter. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the fact-finder, who has the opportunity to observe the witnesses in their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Id.* Moreover, we review the trial court's decision of whether to impose contempt sanctions using the more relaxed "abuse of discretion" standard of review. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). "This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed." *Id.* (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). Here, we find no abuse of the trial court's discretion regarding its decision that Father should not be held in contempt or required to pay Mother for the allegedly missing property. We also find no abuse of discretion in its decision not to impose sanctions for Father's failure to execute a QDRO.

### D. Attorney's Fees & Costs

Finally, Mother argues that the trial court erred in ruling that each party would be responsible for his or her own attorney's fees and in ordering the parties to split the costs of the cause equally. As support for her assertion, Mother basically repeats her argument about

Father allegedly being in contempt.  Father asks us to affirm the trial court's ruling on these matters.  For the reasons stated in the previous section, we affirm the trial court's decision declining to award Mother her attorney's fees for Father's alleged contempt.

Tennessee Rule of Civil Procedure 54.04(1) provides, in relevant part, that "[c]osts included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs[.]"

> Adjudging costs is within the reasonable discretion of the trial court, *Lock v. Nat'l Union Fire Ins. Co.*, 809 S.W.2d 483, 490 (Tenn. 1991), and the trial judge may apportion the costs between the litigants as, in his opinion, the equities demand. Tenn. Code Ann. § 20-12-119. Accordingly, appellate courts are generally disinclined to interfere with a trial court's decision in assessing costs unless there is a clear abuse of discretion. *Lewis v. Bowers*, 216 Tenn. 414, 423, 392 S.W.2d 819, 823 (Tenn. 1965); *Mitchell v. Smith*, 779 S.W.2d 384, 392 (Tenn. App. 1989).

***Perdue v. Green Branch Min. Co., Inc.***, 837 S.W.2d 56, 60 (Tenn. 1992).  Finding no abuse of discretion here, we affirm the trial court's decision to split the costs equally between the parties.

## V.  CONCLUSION

For the aforementioned reasons, we reverse the trial court's decision in part and remand this matter for the court to determine the amount of statutory interest that accrued on the $2,500 child support arrearage owed by Father.  We also vacate the award of $10,392 in statutory interest that Mother was ordered to pay for the period during which the order requiring her to pay child support was not final.  Because the trial court subtracted the $10,392 interest award from Mother's marital share of Father's pension, on remand, the court should determine whether Mother should be awarded an additional interest in Father's pension to remedy the situation, or whether Father should again have the option of paying Mother this sum in lieu of an award from his pension.  We affirm all other aspects of the trial court's decision.  Costs of this appeal are taxed equally to the appellant, Ginger Jackson, and the appellee, Anthony V. Jackson, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.